FILED

12 JUL -6 PM 2:40

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS PELLERIN; RADIANS, INC.; and RADPLUGS, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> HONEYWELL INTERNATIONAL, INC.; HOWARD S. LEIGHT & ASSOCIATES, INC.; and SPERIAN PROTECTION USA, INC., <br><br> Defendants. | CASE NO. 11-CV-01278 BEN (KSC) <br><br> **ORDER GRANTING MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS** <br><br> [Docket No. 28] |

Presently before the Court is Plaintiffs' Motion to Dismiss Defendants' Counterclaims. (Docket No. 28.) For the reasons stated below, the Motion to Dismiss Defendants' Counterclaims is **GRANTED**.

## BACKGROUND

Defendant Honeywell International Inc. designs and manufactures foam hearing protection devices (commonly known as "earplugs"). (Countercl. ¶ 10.) In September 2010, Honeywell acquired Defendant Sperian Protection USA, Inc., which was formerly Defendant Howard S. Leight & Associates, Inc. (Compl. ¶ 10; Countercl. ¶ 14.)

Plaintiff Radians, Inc. also manufactures and sells hearing protection products under various brand names. (Countercl. ¶ 21.) In 2010, Radians decided to manufacture foam earplugs, and began developing a foam earplug and manufacturing process and product. (Compl. ¶¶ 15, 18.) Plaintiff

1  RadPlugs, Inc. was formed to handle Radians' foam earplug manufacturing operations. (*Id.*)

2  Plaintiff Dennis Pellerin worked at Honeywell or Honeywell's corporate
3  predecessors—Sperian and Howard S. Leight & Associates—for 23 years. (Countercl. ¶ 12.) At
4  Sperian, Pellerin was the Manufacturing Engineering Manager. (Compl. ¶ 13.) During his
5  employment, Pellerin was allegedly exposed to trade secrets and confidential information. (Countercl.
6  ¶ 1.) In 1987, Pellerin signed an Employment Agreement that prohibited Pellerin from disclosing "any
7  information concerning [Howard S. Leight & Associates'] inventions, processes, methods, trade
8  secrets, or secret procedures owned or used by the Company at any time during [his] employment or
9  any confidential information in any way relating to the Company's business or affairs as conducted
10 by it during [his] employment." (*Id.* ¶ 13.) In September 2008, Pellerin signed an updated
11 Confidentiality, Non-Disclosure, and Invention Assignment Agreement ("NDA"). (*Id.* ¶¶ 15-18.) The
12 NDA prohibited Pellerin from disclosing or using Sperian's "Confidential Information" or
13 "Inventions" as defined therein. (*Id.*) Pellerin left Sperian in November 2010 and began working as
14 the Vice President of Manufacturing for RadPlugs. (Compl. ¶ 14.)

15  On January 28, 2011, Sperian's general counsel sent Plaintiffs a letter stating that Sperian had
16 learned of Radians' hiring of Pellerin in order to "establish manufacturing capability in the area of
17 disposable and reusable personal hearing protection devices," and warned Radians that Sperian would
18 "move immediately against both Mr. Pellerin and Radians" if it learned that Pellerin disclosed any
19 confidential information. (*Id.*, Exh C; Countercl. ¶ 22.)

20  On May 11, 2011, Plaintiffs filed the present action in San Diego County Superior Court.
21 Plaintiffs seek a declaratory judgment that their manufacturing operations and product do not violate
22 Defendants' purported trade secret rights or Pellerin's obligations under the NDA. In addition,
23 Plaintiffs seek a declaration that the NDA is void and unenforceable. On June 10, 2011, Defendants
24 removed the action.

25  Plaintiffs produced documents which they claim demonstrate that Plaintiffs independently
26 developed their foam earplug manufacturing process and product. (Countercl. ¶ 28.) These documents
27 "are comprised of patents, patent applications, academic publications, handwritten notes, and invoices
28 and other communications with third-party vendors." (*Id.* ¶ 29.) Honeywell argues that the documents

1  produced by Plaintiffs have provided "further reasonable bases for Honeywell to believe" that
2  Plaintiffs have misappropriated its trade secrets. (*Id.*)
3        On December 23, 2011, Honeywell filed nine counterclaims arising out of Pellerin's departure
4  from Honeywell and out of Plaintiffs' development of foam earplug manufacturing process and
5  product. Presently before the Court is Plaintiffs' Motion to Dismiss Defendants' Counterclaims.

## DISCUSSION

7        Under Federal Rule of Civil Procedure 12(b)(6), dismissal is appropriate if, taking all factual
8  allegations as true, the complaint fails to state a plausible claim for relief on its face. FED. R. CIV. P.
9  12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007); *see also Ashcroft v. Iqbal*, 556 U.S.
10 662, 678 (2009) (requiring plaintiff to plead factual content that provides "more than a sheer
11 possibility that a defendant has acted unlawfully"); *accord Anticancer Inc. v. Xenogen Corp.*, 248
12 F.R.D. 278, 282 (S.D. Cal. 2007) (holding *Twombly*'s plausibility standard applies to claims,
13 counterclaims, cross-claims, and third-party claims). Under this standard, dismissal is appropriate if
14 the complaint fails to state enough facts to raise a reasonable expectation that discovery will reveal
15 evidence of the matter complained of, or if the complaint lacks a cognizable legal theory under which
16 relief may be granted. *Twombly*, 550 U.S. at 556.
17       Plaintiffs moved to dismiss all nine counterclaims. Honeywell has voluntarily dismissed the
18 seventh and eighth counterclaims. (Docket No. 38.) The remaining counterclaims will each be
19 addressed in turn.

20     I.    COUNT 4: TRADE SECRET MISAPPROPRIATION
21       Honeywell's fourth counterclaim asserts violations of California's Uniform Trade Secrets Act
22 ("CUTSA"). Honeywell alleges that "[b]y virtue of his employment at Honeywell, Pellerin had access
23 to and acquired Honeywell's trade secret information under circumstances giving rise to a duty to
24 Honeywell to maintain the secrecy of this information and limit its use for the benefit of only
25 Honeywell." (Countercl. ¶ 49.) Allegedly, "Pellerin has used and/or disclosed such information
26 without the express or implied consent of Honeywell," and "Radians and Radplugs have acquired
27 and/or used, and continue to acquire and/or use, such information without the express or implied
28 consent of Honeywell." (*Id.* ¶¶ 52, 53.)

To state a claim for misappropriation of trade secrets under the CUTSA, a plaintiff must allege two elements: "(1) the existence of a trade secret, and (2) misappropriation of the trade secret." *AccuImage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 950 (N.D. Cal. 2003) (citing CAL. CIV. CODE § 3426.1(b)).

In regards to the first element, *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244 (2d Dist. 1968)—which is widely adopted by federal courts[1]—sets out the applicable pleading standard:

> Before a defendant is compelled to respond to a complaint based upon claimed misappropriation or misuse of a trade secret . . . , the complainant should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies. If the subject matter of the claimed trade secret is a manufacturing process, *the plaintiff must not only identify the end product manufactured, but also supply sufficient data concerning the process,* without revealing the details of it, to give both the court and the defendant reasonable notice of the issues which must be met at the time of trial and to provide reasonable guidance in ascertaining the scope of appropriate discovery.

*Id.* at 253 (emphasis added).

Here, although Honeywell has identified the end product (foam earplugs) in its Counterclaims, it has failed to describe the manufacturing process with sufficient particularity to put Plaintiffs on notice of what Honeywell claims is a trade secret. Honeywell's Counterclaims do not contain any information regarding the manufacturing process. The allegations simply recite the statutory definition of a trade secret, concluding that Pellerin "had access to and acquired Honeywell's trade secret information," which "had independent economic value because it was not generally known or readily ascertainable by persons outside of Sperian or Honeywell." (Countercl. ¶¶ 49-50.) "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

---

[1] Honeywell argues that *Diodes* is of questionable value in federal proceedings because, as the court in *Diodes* noted, "federal cases use 'notice pleading,' whereas California uses 'fact pleading.'" *Diodes*, 260 Cal. App. 2d at 250 (citations omitted). Nonetheless, the Ninth Circuit has adopted the standard articulated in *Diodes*, and federal courts in the Ninth Circuit look to *Diodes* for guidance on the applicable pleading standard for claims brought under the CUTSA. *See Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164-65 (9th Cir. 1998); *Borroughs Payment Sys., Inc. v. Symco Grp., Inc.*, No. C-11-06268 JCS, 2012 WL 1670163, at *14 & n.7 (N.D. Cal. May 14, 2012); *Premiere Innovations, Inc. v. IWAS Indus., LLC*, No. 07cv1083 BTM (BLM), 2007 WL 2873442, at *4 (S.D. Cal. Sept. 28, 2007).

In its opposition, Honeywell points only to portions of Randall Kahnke's Declaration in support of its argument that it has sufficiently described the manufacturing process. However, the factual allegations necessary to support Honeywell's counterclaims must be contained in the Counterclaims, not in a declaration submitted in support of its opposition to the Motion to Dismiss the Counterclaims. *See Sensible Foods, LLC v. World Gourmet, Inc.*, No. 11-2819 SC, 2011 WL 5244716, at *6 (N.D. Cal. Nov. 3, 2011).

In regards to the second element, Honeywell has not alleged sufficient facts to establish misappropriation. First, Honeywell's allegations that Pellerin "had access to and acquired Honeywell's trade secret information" is insufficient to establish misappropriation. "Alleging mere possession of trade secrets is not enough." *S. Cal. Inst. of Law v. TCS Educ. Sys.*, No. CV 10-8026 PSG (AJWx), 2011 WL 1296602, at *7 (C.D. Cal. Apr. 5, 2011) (internal quotation marks and alteration omitted). In other words, California does not recognize the "inevitable disclosure doctrine," which means that a party cannot prove trade secret misappropriation by demonstrating that a former employee's new employment will inevitably lead the former employee to rely on the former employer's trade secrets. *Les Concierges, Inc. v. Robeson*, No. C-09-1510 MMC, 2009 WL 1138561, at *2 (N.D. Cal. Apr. 27, 2009) ("[A] threat of misappropriation cannot, as a matter of California law, be inferred from the fact [the defendant-employee], upon voluntarily terminating his employment with [the plaintiff-employer], immediately began working for a direct competitor and appears to be performing for his new employer the same or similar job duties he performed while employed by [the plaintiff-employer]."); *Bayer Corp. v. Roche Molecular Sys., Inc.*, 72 F. Supp. 2d 1111, 1120 (N.D. Cal. 1999); *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1463-64 (4th Dist. 2002). Second, Honeywell does not allege any facts in support of the legal conclusion that Plaintiffs "used and/or disclosed" and "acquired and/or used" Honeywell's trade secrets or confidential information.

Honeywell argues that it has alleged sufficient facts to establish misappropriation. According to Honeywell, Plaintiffs delayed production of documents that would purportedly demonstrate independent development of their processes because Plaintiffs wanted a more detailed description of Honeywell's trade secrets. Later, when Plaintiffs finally produced the documents, Honeywell did not find an exculpatory explanation of Plaintiffs' processes. In addition, Plaintiffs' objection to

1  Honeywell's first proposed expert precluded Honeywell from reaching a conclusion about whether
2  Plaintiffs' system was in fact independently developed.
3         The facts that Honeywell points to, however, do not establish misappropriation. At this stage
4  of the proceedings, the party claiming trade secret misappropriation (Honeywell) must plead facts
5  showing it is entitled to relief. *Nexsales Corp. v. Salebuild, Inc.*, No. C-11-3915 EMC, 2012 WL
6  216260, at *1 (N.D. Cal. Jan. 24, 2012); *SOAProjects, Inc. v. SCM Microsystems, Inc.*, No. 10-CV-
7  01773-LHK, 2010 WL 5069832, at *11 (N.D. Cal. Dec. 7, 2010) (the standard on a motion to dismiss
8  is "whether [the plaintiff] has pled enough facts raising a plausible claim that [the defendant]
9  misappropriated those trade secrets"). Whether Plaintiffs have produced sufficient evidence to
10 demonstrate that they independently developed their processes is irrelevant at this stage of proceedings.
11        In addition, Honeywell argues that courts routinely allow misappropriation claims to proceed
12 on "less robust" factual records, citing *SOAProjects*. (Opp. at 7.) *SOAProjects*, however, involved
13 more detailed factual allegations of misappropriation. In *SOAProjects*, the complaint alleged that
14 SOAProjects and SCM Microsystems ("SCM") had a previous business relationship which included
15 an agreement restricting SCM from soliciting SOAProject's consultants, that SCM hired one of
16 SOAProject's former consultants (who created files of trade secrets on his computer and emailed the
17 files to himself before beginning work at SCM), and that SCM had not used any of SOAProject's
18 services since hiring the former consultant. *SOAProjects*, 2010 WL 5069832, at *1-2. The court
19 found that the fact that the former consultant allegedly took trade secrets and then performed the same
20 work for SCM did not state a claim against SCM. *Id.* at *11. However, the court held that when
21 "other circumstantial allegations" were considered alongside the allegation that SCM acted in concert
22 with the former consultant to misappropriate and benefit from the former consultant's theft, the
23 complaint stated a claim for misappropriation of trade secrets. *Id.* In the present action, Honeywell
24 has not alleged any circumstantial evidence—beyond the allegations that Pellerin allegedly had access
25 to Honeywell's trade secrets—that establishes misappropriation. Accordingly, the fourth counterclaim
26 is **DISMISSED WITHOUT PREJUDICE.**
27 ///
28 ///

## II. COUNT 1: BREACH OF CONTRACT

Honeywell's first counterclaim asserts breach of contract against Pellerin. Honeywell alleges that "[o]n September 30, 1987, Pellerin signed an Employment Agreement with Howard S. Leight & Associates, Inc. that contained promises not to disclose any trade secrets or other confidential information." (Countercl. ¶ 31.) In addition, "[o]n September 15, 2008, Pellerin signed the NDA with Sperian" that "contains promises not to disclose any trade secrets or other confidential information." (*Id.* ¶ 32.) Allegedly, "Pellerin has breached the Employment Agreement and/or the NDA by, among other things, developing a foam earplug manufacturing process for Honeywell's competitors that incorporates Honeywell's trade secrets and/or confidential information." (*Id.* ¶ 34.)

Under California law, to state a claim for breach of contract, a plaintiff must plead facts establishing: "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (5th Dist. 2008).

Here, Honeywell has not pled sufficient facts in support of its allegations. Specifically, Honeywell has not pled what the "trade secrets and/or confidential information" are or whether the confidential information falls within the terms of the agreements, as discussed above. In addition, Honeywell has not pled facts to establish a breach of the Employment Agreement or NDA, because it has not pled facts to establish misappropriation, as discussed above. Such boilerplate allegations of breach are insufficient. *See Sensible Foods, LLC*, 2011 WL 5244716, at *5-6 (dismissing claim for breach of contract where complaint merely stated that the defendants breached a confidentiality agreement by "disclosing all or a portion of Plaintiff's Confidential Information without the express or implied consent of Plaintiff"); *see also Farhang v. Indian Inst. of Tech., Kharagpur*, No. C-08-02658 RMW, 2010 WL 2228936, at *6 (N.D. Cal. June 1, 2010) (allegation that defendants breached an NDA by "disclosing plaintiffs' IP and other confidential information to" plaintiffs' competitors "in the development of similar mobile technology" held insufficient to state a claim). Accordingly, the first counterclaim is **DISMISSED WITHOUT PREJUDICE**.

///

///

### III.   COUNTS 2 AND 3: INTENTIONAL AND NEGLIGENT INTERFERENCE WITH CONTRACT

Honeywell's second and third counterclaims assert intentional interference with contract and negligent interference with contract, respectively, against Radians and RadPlugs. In support of both counterclaims, Honeywell alleges that "[i]n connection with its foam earplug business, Honeywell had a contractual relationship with Pellerin." (Countercl. ¶¶ 38, 44.) Allegedly, Radians and RadPlugs both intentionally/negligently "interfered with Honeywell's contractual relations [with Pellerin], destroying or otherwise undermining th[at] relationship [with Pellerin] through acts of wrongful interference designed to procure Pellerin's breach of his contractual relationship with Honeywell." (*Id.* ¶¶ 39, 45.)

The elements for a claim for interference with contract are: (1) a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of this contract; (3) the defendant's intentional or negligent inducement of a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. *See Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990).

Here, Honeywell's allegations are vague and conclusory. Honeywell does not allege which contract or contracts Radians and RadPlugs allegedly interfered with. From the face of the Counterclaims, it is unclear whether Honeywell intended to allege that Radians and RadPlugs interfered with the at-will employment contract between Pellerin and Honeywell and its predecessors, or that Radians and RadPlugs interfered with Pellerin's confidentiality and non-disclosure obligations. Honeywell argues that Radians' and RadPlugs' procurement of Pellerin's breach of his confidentiality and non-disclosure obligations underlies this claim. Even if Honeywell had sufficiently alleged that Radians and RadPlugs interfered with Pellerin's confidentiality and non-disclosure obligations, Honeywell has not alleged any facts establishing either Radians' or RadPlugs' intentional or negligent inducement of a breach or disruption of the contractual relationship or an actual breach or disruption of the contractual relationship, as discussed above. Accordingly, the second and third counterclaims are **DISMISSED WITHOUT PREJUDICE**.

### VI.   COUNT 9: BREACH OF CONFIDENTIAL RELATIONSHIP

Honeywell's ninth counterclaim asserts breach of confidential relationship against Pellerin. Honeywell alleges that "[d]uring the course of his employment with Honeywell and its predecessors,

Pellerin received access to Honeywell's confidential and proprietary information. Pellerin received such access voluntarily and with the understanding that he not disclose or misuse the confidential and proprietary information, thus giving rise to a confidential relationship." (Countercl. ¶ 84.) Allegedly, "Pellerin has breached the confidential relationship by, among other things, developing a foam earplug manufacturing process for Honeywell's competitors that incorporates Honeywell's confidential and proprietary information." (*Id.* ¶ 85.)

As explained above, Honeywell has not alleged misappropriation with sufficient particularity. In the ninth counterclaim, Honeywell does not allege any additional facts, but merely conclusorily alleges that "Pellerin has breached the confidential relationship by, among other things, developing a foam earplug manufacturing process for Honeywell's competitors that incorporates Honeywell's confidential and proprietary information." (*Id.*) Consequently, Honeywell has not alleged the breach of a confidential relationship with sufficient particularity. The ninth counterclaim is **DISMISSED WITHOUT PREJUDICE.**

## V. COUNT 5: VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200

In the fifth counterclaim, Honeywell asserts unfair competition under California Business & Professions Code §§ 17200 *et seq.* against all Defendants. Honeywell alleges:

> Counter-Defendants have engaged and continue to engage in a continuing pattern of wrongful acts aimed at unfairly competing with Honeywell in violation of California Business & Professions Code sections 17200 *et seq.*, including, but not limited to, unlawful and unfair business practices in violation of Honeywell's rights. . . . Counter-Defendants' continuing unlawful and unfair practices include, without limitation, Counter-Defendants' unauthorized disclosure and use of Honeywell's trade secrets, Counter-Defendants' unauthorized disclosure and use of Honeywell's confidential and proprietary information, and Counter-Defendants' unauthorized interference with contract and prospective economic advantage.

(Countercl. ¶¶ 57-58.)

The Unfair Competition Law ("UCL") prohibits "unfair competition," meaning "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." CAL. BUS. & PROF. CODE § 17200. First, "[b]y proscribing 'any unlawful' business practice, section

17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (internal quotation marks omitted). Second, "unfair" conduct must be violative of a public policy "tethered to specific constitutional, statutory, or regulatory provisions." *Scripps Clinic v. Super. Ct.*, 108 Cal. App. 4th 917, 940 (4th Dist. 2003) (internal quotation marks omitted). Third, "a fraudulent business practice is one that is likely to deceive members of the public." *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1255 (2d Dist. 2009). A UCL claim must be dismissed if the plaintiff has not stated a claim for the predicate acts upon which he bases the claim. *See Gaitan v. Mortg. Elec. Registration Sys.*, No. EDCV 09-1009, 2009 WL 3244729, at *11 (C.D. Cal. Oct. 5, 2009).

As explained above, Honeywell's claims for breach of contract, intentional interference with contract, negligent interference with contract, misappropriation of trade secrets, and breach of confidential relationship are not stated with sufficient particularity to survive the present motion to dismiss. Accordingly, Honeywell cannot state a UCL claim based on these allegations. In addition, Honeywell has not alleged any additional facts establishing "unfair" conduct tethered to any specific constitutional, statutory, or regulatory provision, or any conduct likely to deceive members of the public. Accordingly, Honeywell's fifth counterclaim is **DISMISSED WITHOUT PREJUDICE.**

### VI.   COUNT 6: COMMON LAW UNFAIR COMPETITION

Honeywell's six counterclaim asserts common law unfair competition against all Defendants. Honeywell alleges that "Counter-Defendants have engaged and continue to engage [in] a continuing pattern of wrongful acts aimed at unfairly competing with Honeywell in violation of the common law of California, including, but not limited to, unlawful and unfair business practices in violation of Honeywell's rights." (Countercl. ¶ 63.) "Counter-Defendants' continuing unlawful and unfair practices include, without limitation, Counter-Defendants' unauthorized disclosure and use of Honeywell's confidential and proprietary information, and Counter-Defendants' unauthorized interference with contract and prospective economic advantage." (*Id.* ¶ 64.)

As discussed above, Honeywell has not sufficiently alleged breach of contract, intentional interference with contract, negligent interference with contract, misappropriation of trade secrets, or

breach of confidential relationship. In addition, Honeywell has not alleged any additional facts establishing "unfair" conduct. Accordingly, the sixth counterclaim is **DISMISSED WITHOUT PREJUDICE.**

## CONCLUSION

For the reasons stated above, Plaintiffs' Motion to Dismiss Defendants' Counterclaims is **GRANTED.** Defendants are **GRANTED** forty-five (45) days from the date of this Order to file amended counterclaims.

**IT IS SO ORDERED.**

DATED: July 6, 2012

HON. ROGER T. BENITEZ
United States District Judge